UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

RODERICK D. STUTTS

VS.  CRIMINAL ACTION NO. 3:04CR78TSL-JSC
 CIVIL ACTION NO.  3:06cv596TSL-JCS

UNITED STATES OF AMERICA

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Roderick D. Stutts to vacate pursuant to 28 U.S.C. § 2255. The government has responded in opposition to the motion, and the court, having considered the parties' arguments in light of the record in this cause, including the evidence presented at the evidentiary hearing on defendant's motion, concludes that defendant's motion should be denied.[1]

On April 8, 2004, Stutts was indicted on five counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841A. In December 2004, Stutts was tried and found guilty on four counts, and on February 24, 2005, he was sentenced to a 121-month term of imprisonment on each count, to run concurrently. Stutts timely appealed, and on August 13, 2006, the

---

[1] As a preliminary matter, the court rejects the government's argument that Stutts is procedurally barred from challenging his conviction via a § 2255 motion because he did not present his ineffective assistance of counsel claims on direct appeal. See Massaro v. United States, 538 U.S. 500, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003) (holding that claims for ineffective assistance of counsel are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

Fifth Circuit affirmed his conviction and sentence. Thereafter, on October 20, 2006, Stutts filed his motion to vacate. Stutts' chief complaint in his motion is that his trial counsel, in preparing his defense, failed to investigate a number of matters, including (1) individuals, some of whom were Stutts' employees, who appeared on several of the surveillance videos shown at trial, and who could have testified that they did not see any drug transactions occur; (2) the layout of the shop where three of the transactions occurred, which would have shown that Stutts and the confidential informant were meeting in an open area, where employees could have, but did not, see any transaction occurring; and (3) the confidential informant, who held a grudge against Stutts' family. Stutts further urges that his attorneys' failure to investigate was compounded by their failure to explain to him his right to testify. According to Stutts, his testimony could have provided the jury with explanations as to his actions on the videos, his actions on the days of the alleged drug transactions and his relationship to the confidential informant, possibly leading to his acquittal. Based on the following, the court concludes that relief is not warranted.

Stutts was initially represented by the Federal Public Defender's office, but on August 8, 2004, he retained an attorney, Michael Marks, to represent him. On November 4, 2004, about a

month before Stutts' trial setting, Marks associated attorney Andy Sumrall to help represent Stutts at trial.

At trial, the government presented evidence to show the following: In the spring of 2003, confidential informant Clarence Ward approached members of the High Intensity Drug Trafficking Area Taskforce (HIDTA), and advised that he could arrange a drug purchase from Roderick Stutts. After agents conducted a preliminary investigation of Stutts and Ward brought the agents an audio cassette of a conversation he had with Stutts regarding a drug buy set for the next day, Ward was given the go-ahead to arrange a drug buy.

On April 16, 2003, the day arranged by Ward for the first buy, Ward, who is not a licensed driver, met the HIDTA agents at Veterans Memorial Stadium in Jackson, accompanied by a licensed driver, Danny Jones, who also acted as a confidential informant. HIDTA agents searched Ward and Jones and the car in which they were riding, then followed Ward and Jones to Stutts' auto repair/tire shop where an in-place HIDTA surveillance team took over surveillance. Ward testified that he and Stutts conducted their transaction in the bay of the shop. According to Ward, because he sought to buy 5 ounces of crack cocaine from Stutts, Stutts had to briefly leave the shop to get more drugs. Ultimately, Ward testified that he bought half an ounce of crack from Stutts for six hundred dollars. The agents confirmed that

after the buy, Ward turned over to them a substance, later identified to be 8.1 grams of crack cocaine. While the actual hand-to-hand transaction cannot be seen on the video recording presented in evidence by the government, the jury was able to see Ward greet an individual resembling Stutts, watch the two disappear into the shop, hear them discuss numbers,[2] see Stutts leave the building,[3] and watch him return, having apparently failed to obtain any more drugs, all of which served to corroborate Ward's testimony.

The government claimed a second buy occurred on May 9, 2003 at an apartment complex in Jackson. Ward and HIDTA agents testified that as before, agents searched Ward's person and his car before allowing him to proceed to the apartment complex where he had arranged to meet Stutts. An undercover HIDTA agent, Sandy Townsend, drove Ward to this transaction. Ward testified that when Stutts finally arrived at the apartment complex, Ward got into Stutts' SUV and purchased 3 ounces of crack cocaine from him. Agents testified that after the transaction, they recovered from Ward a substance, later identified to be 58.5 grams of crack cocaine. Due to logistical problems, there was neither an audio nor video recording of the alleged buy.

---

[2] At several points during their conversation, Ward can be heard to say that he would give Stutts "600".

[3] Prior to leaving the building, Stutts can be heard to say, "I ain't got nothing but a half."

4

Ward and HIDTA agents testified that a third buy was arranged for May 23, 2003. Consistent with HIDTA protocol, Ward met with agents at HIDTA headquarters where he and his vehicle were searched, following which Agent Townsend drove Ward to the meeting place. The surveillance video introduced at trial showed that when the pair arrived at the Amoco station, Ward exited the car and walked behind a large garbage dumpster, according to Ward's testimony, to relieve himself. After some delay, Stutts appeared, driving his dark colored Corvette. Ward testified that although he had arranged to buy three ounces from Stutts, Stutts arrived with only one ounce, and because Stutts did not want to sell Ward just an ounce, he left to try to find two additional ounces to sell to him. Stutts returned a while later, and the two went behind the gas station where Ward gave Stutts $1950 for three ounces of crack cocaine.

HIDTA Agents testified that following the encounter at the Amoco, Ward turned over to them a substance, later identified to be 59.6 grams of crack cocaine. As with the first buy, although there was no video of the hand-to-hand transaction, the jury was able to see Ward talking to a man resembling Stutts who was driving a vehicle identified as belonging to Stutts (and which Stutts had been driving in the first surveillance video). The video corroborated Ward's testimony regarding the timing of the transaction, as it shows that Stutts arrived at the Amoco station,

spoke with Ward and then departed after being heard to say that he
"got one" but did not have the other two on him, intimating that
he would return with more.  The video shows that some time later,
Ward exited the vehicle, walked behind the building and was gone
for a few minutes.  Agent Townsend confirmed that after Stutts
returned, Ward and Stutts went behind the building, and that Ward
returned to her vehicle with a substance that he turned over which
was later identified as crack cocaine.

Ward testified that he set up a fourth buy for August 27,
2003 at Stutts' shop.  As with the first buy, he met agents at the
Veterans Memorial Stadium, where he and his car were searched.
Agent Townsend then drove him to Stutts' shop.  Ward testified
that although he had talked to Stutts about buying two ounces of
crack cocaine, when he arrived at the shop for the transaction,
Stutts had only a $100 rock of crack cocaine to sell.  According
to Ward, Stutts told him he had access to more drugs and left the
shop to obtain them.  After Ward and Townsend had waited for
Stutts at the shop for approximately fifteen minutes for Stutts to
return, HIDTA Agent Edwards called off the transaction.  The proof
further showed that Ward turned over to Agent Townsend a 1.8 gram
rock of crack cocaine.  The video presented by the government does
not show a hand-to-hand transaction, nor is there any accompanying
audio of the alleged transaction itself, though Stutts and Ward

can be seen and heard engaged in conversation, apparently relating to the ins and outs of turning a profit in the drug trade.

The last sale charged in the indictment occurred on October 17, 2003. According to Ward, he had arranged to purchase two ounces of crack cocaine from Stutts at Stutts' shop, and again, he and his vehicle were searched by HIDTA agents prior to the transaction. Ward testified that when he and Agent Townsend arrived at the shop, Stutts was leaving and instructed them to wait for him to return. When Stutts arrived back at the shop ten to fifteen minutes later, he and Ward went into the shop where Ward testified they conducted the transaction. After the sale, Ward turned over to HIDTA a substance later identified to be 40.9 grams of crack cocaine purchased for $1250. The surveillance video of the transaction does not show the drug exchange; it does show Stutts and Ward briefly interacting, though the audio of Ward's interaction with Stutts is of poor quality.

Stutts' defense at trial was fabrication. In support of his defense, attorney Sumrall elicited on cross-examination of Ward that Ward was a three-time felon with a then-pending felon-in-possession gun charge whose only source of income was as a confidential informant. Further, Sumrall sought to show that Ward held a grudge against Stutts and Stutts' mother, Dianne. On cross-examination by Sumrall, Ward testified that he and Dianne Stutts had a daughter together, Nicole, who was killed in a train

7

collision, and that following Nicole's death, Dianne's lawyer refused to allow Ward to participate in the settlement of Nicole's wrongful death action. In addition, Ward admitted on cross-examination that during their pre-transaction searches, HIDTA agents searched the upper portion of his boots and never required him to remove his footwear to confirm that he was not hiding drugs in the lower portion of his boots. And, Ward acknowledged that he was a frequent visitor to Stutts' shop and that he could be seen on surveillance videos wandering freely about the shop while waiting for Stutts. In addition, the HIDTA case agent, Edwards, agreed on his cross-examination that HIDTA did not have an open file on Stutts until Ward brought him to the agency's attention, and he further conceded it was possible that Ward, prior to each of the buys, could have planted drugs in an effort to frame Stutts.

In his closing argument, attorney Sumrall pointed out that Ward did not directly identify any of the specific drugs admitted into evidence as the drugs he had received from Stutts and argued that the government had thus failed to carry its burden with regard to the chain of custody of the drugs. He then sought to impugn Ward's credibility and motives, reminding the jury of Ward's criminal background, the agents' failure to make him remove his boots during their searches, his access to Stutts' shop and his grudge against Stutts and his mother. The jury found Stutts

guilty on four of the five counts, acquitting him only on count 2, which involved the drug sale at the apartment complex.

Stutts, proceeding pro se, initially filed a § 2255 motion charging that Marks had rendered ineffective assistance of counsel by allowing one of Marks' employees, Lislei N. Goff, who Stutts alleged had full access to his case file, to serve as a juror in his case. Stutts further charged that he received ineffective assistance of counsel because Marks, in an effort to hide the fact that Goff was his employee, wrongly advised Stutts that the only basis for an appeal would be the government's failure to prove "chain of custody" of the drugs. Stutts subsequently amended his motion, abandoning his claim regarding juror Goff, and adding the claims that his trial counsel failed to adequately investigate, failed to present character witnesses for Stutts, and failed to fully inform Stutts of his right to testify.[4]

At his hearing, Stutts, having abandoned his claim that Marks allowed an employee to serve on the jury, proceeded on the theory that counsel failed to adequately investigate individuals seen on the videos, the layout of his shop and Ward. He also took the position that their failure to investigate was exacerbated by

---

[4] Stutts filed a pro se motion to amend which generally set forth these bases for relief. Later the court granted a second motion to amend filed by appointed counsel which simply expounded upon the previously-asserted claims related to his attorneys' failure to investigate his case.

their failure to adequately apprise him of his right to testify on his own behalf.[5]

At the evidentiary hearing, Stutts testified that he retained Mr. Marks, whom he knew from a civil matter, because he trusted him. According to Stutts, prior to Sumrall's joining his defense team, Mr. Marks represented to him that the government's case against him was not strong as none of the transactions were seen on the video and as it would just be his word against Ward's. He further testified that although he met with Marks three times, he only met Sumrall once and did not know that Sumrall would be the lead trial attorney. Stutts maintained that he did not watch the videos with either of his attorneys, but rather viewed them with Marks' secretary and that neither attorney purported to prepare

---

[5] In his post-hearing submission, Stutts also makes these further complaints: (1) trial counsel failed to meet with Stutts a sufficient amount of time; (2) trial counsel failed to investigate possible exculpatory evidence, including Stutts' employees who were seen in the surveillance videos; (3) trial counsel failed to fully disclose their trial strategy, which led to Stutts' being unable to provide proper witnesses or explanations of the alleged drug transactions; and (4) trial counsel gave him conflicting legal advice. While defendant delineates these as separate bases for relief, in the court's view, the first three are actually part of defendant's general claim that counsel failed to adequately investigate his defense. The court views the fourth as a new claim for which leave to add has not been granted. The court further observes that, according to Stutts' own testimony, during his first joint meeting with Marks and Sumrall, both attorneys advised that he should consider taking a plea agreement. Thus, notwithstanding any earlier representations by Marks that he "could make the case go away" within a month or so of his trial, Stutts was receiving consistent advice from his legal team, i.e., that he should accept a plea agreement.

him for trial or to explain to him his right to testify.  Stutts stated that in 2003 and 2004, while his case was pending, he had access to his former employees and could have placed his attorneys in contact with them, had they only asked.  Stutts also stated that at trial, he had character witnesses available to testify, but that his attorneys rejected his requests to call them.  At his evidentiary hearing, while he maintained that he had wanted to testify at trial, Stutts did not offer testimony addressing or explaining his actions or statements seen in the videos offered by the government at trial.  That is, Stutts made no proffer as to what his testimony at trial would have been had his attorneys allowed him to testify.

On his direct examination at the evidentiary hearing, Sumrall testified that after he reviewed the discovery in the case, including the videos, it was decided that the theory of the case would be that Ward had engaged in a scheme to set Stutts up due to animosity toward Stutts and his mother, Dianne.  Sumrall maintained that as part of this trial strategy, he sought to highlight the opportunities that Ward had to hide or to plant evidence, as well as to emphasize Ward's deficient character and background.  Sumrall agreed that, even after viewing the videos, he did not ask Stutts to produce any of his employees for an interview and although he did drive by Stutts' shop prior to trial, he never attempted to go to the shop to either talk to the

11

employees or to get a better idea of its layout. For his part, Sumrall did state that Stutts never brought any of the employees to his attention. Regarding character witnesses, Sumrall stated that, during the trial, he advised Stutts that he did not think character witnesses would make a difference in the case, but he advised Stutts that it was for him to decide whether to call such witnesses. As for Stutts' own testimony, Sumrall maintained that while he advised Stutts not to take the stand, he made clear to Stutts that it was his own decision whether to testify.

Marks testified that Stutts rented the space for the tire shop from him and that he first came to know him in connection with a civil matter. According to Marks, once retained as counsel in this criminal case, he asked Stutts about exculpatory matters, but Stutts did not volunteer any potential witness. Marks further testified that he did not undertake to interview any of the individuals seen on the videos. Marks did try to telephone confidential informant Ward, but did not persist in his efforts after Ward hung up on him. Marks, like Sumrall, testified that the decision whether to call witnesses and whether to testify on his own behalf were left to Stutts.

At the evidentiary hearing, Stutts also called as a witness his former employee, Kristen Jurden. She identified herself as appearing on the video of the October 17, 2003 transaction. She further testified that, although her work area looked into the bay

area where the transaction allegedly occurred, she did not see a drug transaction that day or any other day that she worked for Stutts. Finally, she testified that she would have been available to testify at trial had Stutts' attorneys contacted her.

Stutts also presented a proffer of another employee, Eugene "Shorty" Jones, who was seen in the August 27, 2003 and October 17, 2003 surveillance videos taken at Stutts' shop. By his proffer, Jones stated that during his employment, although he could see the area in which Stutts and Ward were alleged to have engaged in their transactions, he did not see any drug transaction at Stutts' shop during his employment and that he would have been available to testify at trial had he been contacted to do so.

Lastly, Stutts called his mother, Dianne Stutts, to the stand. She gave details of her relationship with Ward and the cause of the animosity between them following the death of their daughter. Ms. Stutts testified that she was available and willing to testify at the trial but was never asked to do so.

"Under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial." Massaro v. United States, 538 U.S. 500, 505, 123 S. Ct. 1690, 1694 (2003). In order to show counsel's deficiency, a defendant must overcome "a strong presumption that counsel's conduct falls within the wide

13

range of reasonable professional assistance" and show that "counsel's representation fell below an objective standard of reasonableness" relative to "prevailing professional norms." Strickland, 466 U.S. 688-89, 104 S. Ct. at 2065). To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. To succeed on his ineffective assistance of counsel claim, a defendant must establish both prongs. Id. The court first addresses defendant's argument that his counsel denied his right to testify on his own behalf.

"'A criminal defendant has a constitutional right to testify in his own behalf, and this right is granted to the defendant personally and not to his counsel.'" United States v. Cobb, 204 F.3d 1114, 1999 WL 1328017, *1 (5th Cir. Dec. 9, 1999) (quoting United States v. Martinez, 181 F.3d 627, 628 (5th Cir. 1999)). A defendant's waiver of "this right must be knowing and voluntary." Id. On one hand, the Fifth Circuit recognizes that whether a defendant testifies or not may be part of counsel's trial strategy, such that "the decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." United States v. Mullins, 315 F.3d 449, 452 (5th Cir. 2002). On the other hand, the court has held "it cannot be permissible trial strategy,

regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." Id.

Here, the court finds credible Marks' and Sumrall's testimony that they informed Stutts of his right to testify and that the ultimate decision not to take the stand was Stutts'. Indeed, Stutts' own testimony at the evidentiary hearing confirmed that he made the decision not to testify upon his counsels' advice. Specifically, Stutts testified on direct examination as follows:

> Q. With regard to testifying, did you want to testify?
> A. Yes, I wanted to testify.
> Q. Did you make that known to [trial counsel]?
> A. Well, I told them I wanted to testify, and they told me they didn't want me to testify because they said that they will hear that it is my voice on the video – – I mean, on the audios. And they didn't want me to testify.
> Q. Okay.
> A. So I left it at that.

Accordingly, as defendant has not shown that counsel were deficient by denying him the right to testify, Stutts is not entitled to relief on this ground.[6]

Turning to defendant's claims that counsel failed to investigate his case, the Supreme Court recognized in Strickland:

---

[6] Although defendant does not raise the issue of character witnesses in his post-evidentiary hearing briefing, the court likewise credits Marks' and Sumrall's testimony that the decision to not call character witnesses was made by Stutts. Thus, to the extent that defendant still purports to seek relief on this basis, the claim is denied.

15

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690–92, 104 S. Ct. at 2066. Even in the event of a deficiency, "[t]he defendant [still] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Although the government inexplicably declares that Stutts has failed to specify precisely what he contends his trial counsel failed to investigate, Stutts has consistently pointed to the following three areas that he contends trial counsel should have but did not investigate: (1) individuals who were employees of Stutts who appeared on several of the surveillance videos shown at trial who could have testified that they did not see any drug transactions occur; (2) the layout of the shop, which would have shown that Stutts and the confidential informant were meeting in an open area, where employees could have, but did not, see any

16

transaction occurring; and (3) Ward, who held a grudge against Stutts' family.

Here, the court is not persuaded that there was any deficiency in counsels' investigation of Ward, and particularly of his criminal background and his alleged motive and opportunity to set up Stutts. Indeed, this was the strategy of the defense, to discredit Ward during the trial. Specifically, counsel brought to the jury's attention that it was Ward who brought the defendant's name up to HIDTA, that he was a three-time felon, that his sole (legitimate) source of income was as a confidential informant and that he harbored a grudge against Stutts and his mother. Defendant cannot and does not deny that the foregoing was presented and considered by the jury. Instead, he faults trial counsel for not offering Stutts' mother to testify on the issue of Ward's animosity toward her and her son. However, the jury was presented with the facts that had supposedly generated Ward's animosity, and the failure to present cumulative testimony was not a deficiency in counsels' performance, and certainly not one that could reasonably be found to have resulted in any prejudice to defendant.

As for Stutts' further allegations of counsels' failure to investigate, the court will assume for the sake of argument that trial counsel should have investigated and presented evidence of the layout of the shop where some of the transactions occurred,

17

and should have talked to Stutts' employees who were seen on the tape and could and would have reported that they never witnessed any drug transactions; however, even assuming that counsel were deficient under <u>Strickland</u> on account of these failures, the court is not persuaded that defendant has shown that he was prejudiced as a result. Defendant's position, as the court understands it, is that employees who were present at the shop on the occasions of the alleged transactions (e.g., "Shorty" and Kristen) would have testified that they would have been able to see the transactions had they in fact occurred and that they did not witness any drug transactions between Ward and Stutts. However, it is apparent to the court from its own review of the videotapes that the employees were not in the bay area or office at all times but rather were often outside the bay area and office, where they obviously would not have been in a position to see what was happening in the shop bay. For example, the day of the first buy, two employees could be seen on one videotape sitting in chairs on the walkway outside the shop for an extended period of time while Stutts and Ward were inside. On another of the videos, "Shorty" is seen moving back and forth from inside to outside the shop, moving tires and rims and assisting customers with retrieving tires from their car trunks. The videotapes thus belie the suggestion that a transaction did not occur because employees did not see the

18

transaction occur.[7] Certainly, it cannot be said that there exists a reasonable probability that the outcome of the trial would have been different had trial counsel presented evidence of the shop layout and testimony of shop employees.[8] Accordingly, as Stutts has not shown that he was prejudiced by trial counsels' alleged failures, he is not entitled to relief on his claim that trial counsel failed to investigate his defense.

Based on the foregoing, it is ordered that defendant's § 2255 motion is denied.[9]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 22nd day of September, 2009.

/s/ Tom S. Lee_____
UNITED STATES DISTRICT JUDGE

---

[7] The court notes, too, that the Amoco transaction occurred away from the shop.

[8] Moreover, the court's extensive review of the video recordings, with the accompanying audio, leaves it with the impression that the prosecution's star witness, Ward, made no effort to hide from Stutts' employees either his occupation as a drug dealer or that he was at the tire shop to do drug business with Stutts. Accordingly, had trial counsel interviewed and called defendant's employees to testify at trial, these witnesses would have been subject to rigorous cross-examination, and it would not have changed the outcome of this trial.

[9] The court's opinion operates to terminate all pending motions in this case, except the motion filed on August 11, 2009.

19